# GREGG COMPANY, LIMITED, Complainant,

## *v.*

# UTUADO SUGAR COMPANY, Dft.

San Juan, Equity, No. 898.

LOANS TO RECEIVERS.

Receivership—Administration Expenses.

　　1. The court can unquestionably contract any expenses, by receiver's certificates or otherwise, necessary for the preservation of the property, and, in certain cases of railroads, and to a limited extent, possibly, of sugar mills, it can authorize the carrying on of the business in order to preserve the property.

Receivership—Priority of Claims—Loans to Receivers.

　　2. Where the court authorized the receiver to borrow money and issue receiver's certificates therefor, and he borrowed money upon refacción contract instead, and not in the manner authorized by the court, and did not issue receiver's certificates, all the money so borrowed which actually went into the preservation of the property should be segregated from the rest, and should be paid as an administration expense, along with other proper administration expenses.

Same.

　　3. *Quære:* whether the balance of the money so borrowed, which did not go into the preservation of the property, is entitled to a preference over mortgages existing prior to the receivership.

Opinion filed April 4, 1916.

NOTE.—For an elaborate treatment of the question of priority of claims against property in hands of receiver over recorded liens, see notes in 2 L.R.A.(N.S.) 1013, and 41 L.R.A.(N.S.) 695.

Gregg Co. v. Utuado Sugar Co.

HAMILTON, Judge, delivered the following opinion:

Let me state the point which is in my mind. In receiverships, what are called administration expenses necessarily come ahead of everything else. That is the necessity of the case. But there are two kinds of administration expenses, and within the past few years the courts have been beginning to differentiate them. It is that distinction which gives me trouble in this case, and I want to call your attention to it, so as to see whether you want to furnish any authorities on it.

In a good many kinds of business, particularly railroads, the court has to authorize the operation of the plant, I will call it for short. That is a necessity, that is, to keep the business in existence at all. It is not to make money especially, but to keep it a going concern. If it is not a going concern, it is worth nothing. So the custom has grown up of issuing receiver's certificates for the operation of the business, and that has been fully sanctioned by the Supreme Court of the United States. But how far that goes, is a question that has not been settled by the Supreme Court of the United States. There are conflicting decisions in other courts. A great many courts have said that, as to everything except railroads, a court cannot authorize a business to be carried on. This has come up pro and con in this court in connection with the receiverships of different centrals.

1. So much for the general principle. Now as to this particular case: This claim of Armstrong the court found in existence when the receivership started. The court had nothing to do with creating it, but, to use an analogy, it was in the nature of a mortgage. The court took possession of certain

property, of a crop, and perhaps sugar already manufactured, and took it away from the ordinary course which it would have followed, that is, to go to Armstrong, and in so doing the court recognized the claim of Armstrong to the sugar or to its proceeds, or to some proper claim. That is what the court did when it took charge, and it has never meant to change the claim which Armstrong had in the beginning. The receiver has had a property which is already subject to a mortgage, that is, subject to this claim of Armstrong. Now what can the court do in regard to property in receivership under those circumstances? It can unquestionably contract any expenses by receiver's certificates or otherwise, necessary for the preservation of the property, and in certain cases of railroads, and to a limited extent, possibly, of centrals, it can authorize the carrying on of the business in order to preserve the property. Now those expenses would come ahead of a prior mortgage; but it is not everything that the court may do, or that the receiver may do, that necessarily comes ahead of a prior mortgage, and that is the problem in my mind in the case here.

2. Now as to Iglesias: I think he was the first to loan money to the receiver, so far as what is now before the court is concerned. The order of June 3, 1914, authorized the receiver to borrow money. I do not recall whether it said for the preservation of the property,—whatever it says is in the order. It authorized him to borrow money and issue receiver's certificates therefor. He did not, so far as appears, follow that order of the court. He borrowed $50,000, but did not issue receiver's certificates therefor. He proceeded to enter into what seems in form to have been intended to be a refacción contract, although it is limited to the crop of one specific year.

Gregg Co. v. Utuado Sugar Co.

That is what he did. He did not follow the order of the court. It may amount to the same thing,—I am not passing on that, —but, on the face of it, it was not the same thing. He got the money from Iglesias. The crop to which this contract looked was not a success, as there would not have been anything material to come to Iglesias if the crop had been ground instead of being stopped.

The Iglesias claim as a priority was contested when presented, and it went to the master. The master, after careful hearing and deliberation, reported that it was not entitled to any priority at all, that it was simply a common debt. Iglesias, of course, excepted to that, and the matter came up before me and was considered in the opinion, which has been read once or twice. It did not seem to me that the master's view was the correct solution of it. Here is money which had been borrowed under an order of court, not in the way directed by the court, but still which had been borrowed under an order of court, so that it seemed right for one of two or three things to be done.

In the first place, all the money that had been borrowed and had actually gone into what the court unquestionably had a right to authorize, the preservation of the property, should be, if possible, segregated from the rest, and that should be declared to be an administration expense in every sense of the word, and should be paid as such. The present receiver has found and reported, as I understand it, that this is some $2,700. There is no question about that. It will be allowed as a proper administration expense, and will be paid along with any other proper administration expense. That is out of the way.

3. Now, what becomes of the balance of about $9,000? The

rank of that is what I am in great doubt about. I appreciate the argument on both sides fully, and the question troubles me a great deal. The master reported that it was simply a common credit. I have not confirmed that part of the master's report, as I recollect it. I think I am bound by the record, but this whole matter is now before me. I simply gave my views and referred the matter further to the receiver as a master, and now he has made a report,—so that the whole thing, as I understand it, is still before me. Now what is the condition of that $9,000 ? It was money that was obtained by the receiver. It was loaned, so far as appears,—and I do not question the good faith of Mr. Iglesias,—upon what he took to be the order of the court, and yet it was put in the shape of a crop lien, a lien limited by its terms to one year, and it seems to me that it could not from the necessity of the case, being in a receivership and in equity, be held to be carried forward from year to year,' because the local law could not apply. The local law could not control equity jurisdiction in that way. I asked the receiver to report on this, and it seems from his report that it is worthless as to the crop of 1913, and what was in the mind of the court when that opinion was rendered is out of the way. There can be no relief afforded from the crop of 1913.

The matter, then, comes up before me for solution, as to the condition of that $9,000, borrowed by direction of the court, but not in the form directed by the court. Armstrong contends that he is at least on a parity with that $9,000; that all that the court has done has been subject to the mortgage, using the word as above, with which the court took the property. That is the problem before me. And it is a problem

on which I wish light. If you can throw any further light on it, I would be very glad to have it. I just wanted to express my views, so that you could see what is in my mind. Of course, whether the parties furnish any further authorities or not, I will go ahead and decide it. I would like further light upon it in consideration of the principle which has been borne in upon me, in the past twelve months more than ever, that the court's power as to loans by receivers is not as extensive as is sometimes asserted,—that it is limited to the proper administration of the property, and does not permit receivers to go into carrying on the business generally. In that view of it, the problem is not quite as simple as one would like.

There is this further matter which I would be glad, Mr. Dominguez, if you would look at. To what extent, supposing that the receiver did not borrow this money in the exact way the court directed, has the court recognized, however, his borrowing the money? Of course I do not carry all the record in my mind. Was this loan reported to the court and confirmed by the court?